UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:11-cr-00365-GEB |
|---|---|
| Plaintiff, | |
| v. | **TENTATIVE RULING RE DEFENDANT'S FORMAL OBJECTIONS TO PRESENTENCE REPORT** |
| JOSE JESUS AGUILAR-MADRIZ, | |
| Defendant. | |

Defendant objects to application of a two-level sentencing enhancement imposed by Probation under Sentencing Guideline § 2D1.1(b)(1), for possession of a dangerous weapon. (Def.'s Formal Objections to Presentence Investigation Report ("Def.'s Objs."), ECF No. 285.) Probation recommends this enhancement be applied based upon the discovery of a loaded .38-caliber pistol during the July 26, 2011 DEA raid of the Mendocino garden, (Presentence Investigation Report ("PSR") ¶¶ 19-20, 44), which is one of the two marijuana grows for which Defendant admitted responsibility in the factual basis to his plea agreement. (Def.'s Plea Agreement A-1, ECF No. 202.)

Although the Court raised the issue of whether this objection was timely, based upon the Stipulation and Order to Continue Sentencing filed January 6, 2014, (ECF No. 257), the objection is considered timely.

1

Defendant opposes a two level increase for the referenced firearm, arguing:

> Defendant was unaware of a gun being present at that location. In addition, arguably, it is probable that the person that was seen in the area where the gardens were located was not a co-conspirator. There is no evidence, other than his presence, to indicate the person seen near where the gun was found was a co-conspirator. Absent evidence of the unknown person's involvement, the court should not make the defendant accountable for this unknown person's possession of a firearm.

(Def.'s Objs. 2:12-19.)

The government does not specifically address Defendant's objection in its Sentencing Memorandum, however, the government indicates "it does not have any objection to the factual content or sentencing guideline calculations contained within the PSR" and recommends the Court adopt the "guideline calculations of the PSR." (Gov't Sentencing Mem. 1:26-2:2, ECF No. 298.)

U.S.S.G. § 2D1.1(b)(1) prescribes: "If a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels." This "two-level enhancement for possession of a firearm in a drug offense 'should be applied if [a] weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" United States v. Williams, 434 F. App'x 585, 587 (9th Cir. 2011) (quoting U.S.S.G. § 2D1.1 cmt. n.3[1]).

---

[1] The quoted application note is contained in § 2D1.1 Application Note 11(A) of the 2013 Sentencing Guidelines.

1          Further, under the Sentencing Guidelines, a defendant may be sentenced not only on the basis of his own conduct, but "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," a defendant may be sentenced based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

          As part of his plea agreement, Defendant agreed that the following facts are accurate:

> In 2011, [Defendant] operated a drug trafficking organization ("DTO") . . . . His DTO was responsible for at least two marijuana grows in 2011: the "Mendocino garden," just off Forest Service Road in the Mendocino National Forest in Tehama County, and the "Lakehead garden", adjacent to co-defendant DAVID MARTINELLI's residence in the city of Lakehead, in the Shasta National Forest in Shasta County.
>
> On July 26, 2011, law enforcement raided the Mendocino garden, where they found a total of 8,437 marijuana plants. They found a well worn trail leading from the U.S. Forest Service Road M4 into the grow. In the garden, there was a sleeping area with five sleeping bags. In the separate kitchen area, agents found: food items . . . , four unopened Coleman propane bottles . . . ; and processed marijuana.
>
> . . . .
>
> [Defendant] admits that he knowingly and intentionally entered into an agreement with members of the DTO and REEVES, MARTINELLI, and others to manufacture at least 1,000 marijuana plants.

(Plea Agreement A-1.)

Moreover, the following portions of the PSR are uncontroverted:

> 5.  The government and defendant agree the defendant's role was Organizer or Leader, USSG § 3B1.1(a).
>
> . . . .
>
> 15.  On July 18, 2011, Gregorio Zapien-Mendoza was driving [Defendant's] pickup when he was stopped by a California Department of Fish and Game warden in the Mendocino National Forest. Zapien-Mendoza said he intended to go hiking. The warden noticed three gallons of liquid fish fertilizer, three 25-pound bags of dry fertilizer, and two one-gallon propane tanks. The GPS device revealed the pickup stop location was near the trail for the large marijuana garden.
>
> . . . .
>
> 19.  On July 26, 2011, the Mendocino marijuana garden was raided by [law enforcement]. . . .
>
> 20.  During the raid, a male fled and was not found. A pair of trimming scissors and an Interarms .38-caliber handgun, which was loaded with five .38 caliber hollow point rounds of ammunition, was found.
>
> 21.  The marijuana garden consisted of a complex irrigation system using water from a nearby stream and sleeping area with five sleeping bags, a kitchen, groceries, and propane bottles used for camping. Agents located dried bags of marijuana, processed marijuana, and several st[alks] of marijuana being processed.  Agents eradicated 8,437 marijuana plants from the Mendocino garden complex.

(PSR ¶¶ 5, 15, 19-21.)

I find that the referenced uncontroverted facts and the inferences that can reasonably be drawn therefrom evince, by a preponderance of the evidence, that the .38-caliber handgun was used in furtherance of the jointly undertaken manufacturing of

4

marijuana. The loaded firearm was found in the Mendocino garden with a pair of trimming scissors and thousands of marijuana plants. See Williams, 434 F. App'x at 588 ("[I]t was not clearly improbable that the gun found above a ceiling tile in the bedroom [of the apartment in which a drug distribution conspiracy was being carried out], with the magazine in a nearby dresser drawer, was connected to the [drug] offenses of which [the defendant] was convicted.").

I also find that even if Defendant's statement in his formal objections that he "was unaware of a gun being present at that location" is credited, the possession of a gun by another person in furtherance of the jointly undertaken marijuana grow at the Mendocino garden was reasonably foreseeable. See United States v. Garcia, 909 F.2d 1346, 1350 (9th Cir. 1990) (affirming application of weapon enhancement to a defendant's sentence where a co-conspirator possessed a firearm and it appeared from the record that the defendant did not have actual knowledge of that possession).

"While [the Ninth Circuit] has stop(ped) short of holding that there is a presumption as to the presence of a firearm in illicit narcotics transactions, [it] ha[s] noted that trafficking in narcotics is very often related to the carrying and use of firearms." Garcia, 909 F.3d at 1350 (internal quotation marks and citations omitted). Especially considering the large size of the marijuana crop "involved in this case, . . . possession of the gun was reasonably foreseeable." Id.

Defendant's "suggestion that [it is unforeseeable that a firearm would be possessed in furtherance of his marijuana manufacturing] is false to the point of absurdity." Harmelin v. Michigan, 501 U.S. 957, 959 (1991). It is a matter of common sense that a firearm could be used to safeguard a marijuana crop of this size.

For the stated reasons, Defendant's objection to a two-level sentencing enhancement under § 2D1.1 is overruled.

Dated:  March 13, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge